**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| LAUSTEVEION JOHNSON,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>GAROFALO, *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 3:21-CV-00239-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 35] |

This case involves a civil rights action filed by Plaintiff Lausteveion Johnson ("Johnson") against Defendants James Dzurenda ("Dzurenda"), Joseph Ferro ("Ferro"), Micaela Garofalo ("Garofalo"), Guillermo Hernandez ("Hernandez"), William Hutchings ("Hutchings"), Monique Hubbard-Pickett ("Hubbard-Pickett"), Marc LaFleur ("LaFleur"), Leo Martinez ("Martinez"), Kimberley McCoy ("McCoy"), Jennifer Nash ("Nash"), Francis Oakman ("Oakman"), and Brian Williams ("Williams") (collectively referred to as "Defendants"). Currently pending before the Court is Johnson's emergency motion for preliminary injunction. (ECF No. 35.) Defendants responded, (ECF Nos. 40, 41)[2], and Johnson replied. (ECF No. 43.) For the reasons stated below, the Court recommends that Johnson's emergency motion for preliminary injunction, (ECF No. 35), be denied.

**I.　FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Johnson is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Northern Nevada Correctional Center ("NNCC"). Johnson was convicted on July 8, 2004, of one Category A felony and

---

[1]　This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]　ECF No. 41 consists of exhibits to Defendants' opposition, (ECF No. 40), and was filed under seal. The Court denied Defendants' motion to seal, (*See* ECF No. 47). Therefore, ECF No. 41 is now unsealed.

one Category B felony in Nevada state court. (ECF No. 41-2.) On July 13, 2004, Johnson was sentenced on the Category A felony to a term of life with the possibility of parole after ten years and to a minimum of eight years to a maximum of twenty years on the Category B felony, to be served consecutively. (*Id.*) On May 1, 2019, Johnson was paroled on the Category A felony. (ECF No. 8 at 8; ECF No. 35 at 12.) He started serving his sentence for the Category B felony conviction on May 2, 2019. (*Id.*)

On July 18, 2019, Johnson earned his high school diploma. (ECF No. 35 at 30.) Pursuant to Nevada Revised Statute ("NRS") 209.4465, an inmate may receive good time credits toward a reduction in their sentence for earning a high school diploma.

On May 24, 2021, proceeding *pro se*, Johnson filed an inmate civil rights complaint pursuant to 42 U.S.C. § 1983, which was screened in accordance with 28 U.S.C. § 1915A(a). (ECF Nos. 7, 8.) All claims were dismissed without prejudice. On January 24, 2022, Johnson filed a motion for leave to file a first amended complaint ("FAC"). (ECF No. 12.) Johnson's motion was granted and the FAC was also screened. (ECF No. 20.) Upon screening, Johnson was allowed to proceed with two First Amendment retaliation claims. (*Id.*) The first claim is based on the allegations that Defendants Williams, Dzurenda, Nash, Oakman, and Garofolo allegedly provided a false high-risk assessment during his 2019 parole hearing. The second claim is based on allegations that Defendants Ferro, Moyle[3], and LaFleur failed to provide Johnson with all of the good time credits he earned by receiving his high school diploma. (*Id.*)

On December 27, 2022, Johnson filed the instant emergency motion for preliminary injunction. (ECF No. 35.) Johnson argues that, out of retaliation for filing grievances, Defendants did not give him the full 90 days of good time credit he earned for receiving his high school diploma. (*Id.* at 6.) Johnson argues that he is entitled to 90 days of credits towards his parole eligibility date ("P.E.D.") under NRS 209.4465. (*Id.*) According to Johnson, proper application of these good time credits would advance

---

[3] Pursuant to Fed. R. Civ. P 4(m), Defendant Moyle was dismissed without prejudice for a failure to properly effectuate service. (ECF No. 31.)

Johnson's P.E.D. from May 2, 2023, to February 2, 2023. (*Id.*)

Defendants opposed the motion. (ECF No. 38.) Defendants argue the motion should be denied because Johnson fails to: (1) articulate that he will suffer irreparable harm if the injunction is not granted; and (2) establish a likelihood of success on the merits. (*Id.*) Defendants submit evidence they claim establishes Johnson received 90 days credit towards his minimum and maximum aggregated sentences. (ECF No. 41-1 at 14, 23.) Moreover, Defendants assert NRS 209.4465(8) excludes offenders convicted of class A or B felonies, like Johnson, from receiving credit towards the P.E.D. (ECF No. 40 at 3-5.).

In his reply, Johnson argues that NRS 209.4465(8) was added after his conviction and therefore does not apply. (ECF No. 43 at 7-9.) He cites Nevada Supreme Court Case *Williams v. State Department of Corrections*, 402 P.3d 1260 (Nev. 2017), in support of his argument. (*Id.*) Additionally, Johnson argues Defendants improperly applied the credits towards his 10 years to life sentence for his conviction of the Category A felony, for which he was paroled prior to receiving his high school diploma. (*Id.* at 6-7.)

On January 27, 2023, the Court held an evidentiary hearing on Johnson's motion for preliminary injunction. (ECF No. 49.)

## II.    LEGAL STANDARD

Generally, the purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) (quotation marks and citation omitted). The instant motion requires the Court determine whether Johnson has

established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id*. at 20 (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 555 U.S. at 51; *see also Alliance*, 632 F.3d at 1131. The Ninth Circuit has since found that post-*Winter*, this circuit's sliding-scale approach, or "serious questions" test survives when applied as part of the four-element *Winter*'s test. *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply towards the Johnson can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* (citations omitted). The portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the Johnson, was expressly overruled by *Winter*. *See Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1127 (9th Cir. 2009).

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984); *see also Committee of Cent. American Refugees v. Immigration & Naturalization Service*, 795 F.2d 1434, 1442 (9th Cir. 1986). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or serious damage will result. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting

*Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)).

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. §3626(a)(2). Thus, section 3626(a)(2) limits the Court's power to grant preliminary injunctive relief to inmates. *Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)(2) . . . operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

### III.    DISCUSSION

In this instance, Johnson is requesting a mandatory, as opposed to prohibitory, injunction that the Court mandate a change to how his credits were awarded, not prevent the credits from being changed. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) ("This relief is treated as a mandatory injunction, because it 'orders a responsible party to 'take action.'") (citation omitted). As such, the standard for granting the mandatory preliminary injunction requested here is much higher than for a prohibitory injunction and will not to be granted unless both the facts and the law clearly favor the moving party and extreme or serious damage will result. *See Garcia*, 786 F.3d at 740 (citations omitted). The Court will address the issue of good time credits, whether Johnson can clearly show retaliation, and whether extreme or serious damage would result to Johnson if a mandatory injunction is not granted.

///

///

### A. Retaliation Standard

It is well established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Within the prison context, a viable retaliation claim has five elements: (1) a state actor took some adverse action against the inmate, (2) because of, (3) the inmate's protected conduct, and that the action, (4) chilled the inmate's exercise of his First Amendment rights, and (5) did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567–68. The adverse action must be such that it "would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114 (quoting *Rhodes*, 408 F.3d at 568).

An inmate must submit evidence, either direct or circumstantial to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. *Pratt v. Rowland*, 65 F.3d 802, 806-07 (9th Cir. 1995). "[A] plaintiff must show that his protected conduct was 'the "substantial" or "motivating" factor behind the defendant's conduct.'" *Brodheim*, 584 F.3d at 1271 (quoting *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). The plaintiff "need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent.'" *Id.* (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)).

To raise a triable issue as to motive, plaintiff must offer "either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of that motive]." *McCollum v. Cal. Dep't of Corr. and Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (citation and quotation marks omitted). Circumstantial motive evidence may include: "(1)

proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . .action were false and pretextual." *Id.* (internal citation and quotation marks omitted). However, "mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

### i.   Adverse Action – Application of Good Time Credits

Based on the evidence and testimony of the Chief of the Offender Management Division, Kirk Widmar, provided during the evidentiary hearing, the Court finds that Johnson's good time credits were properly applied to his P.E.D. (ECF No. 49.) Widmar's testimony and Exhibits 502 and 503 (Johnson's Credit History by Sentence for his maximum and minimum terms) affirmatively establish Johnson received 90 days credit toward both his minimum and maximum aggregated sentences appropriately, pursuant to NRS 209.4465. (ECF No. 49 at Exh. 502, 503.)

Specifically, Exhibit 503, as explained by Widmar's testimony, reflects the Credit History for the minimum term of Johnson's current sentence for his Category B felony. (ECF No. 49 at Exh. 503.) As this document reflects, Johnson's current sentence began on May 2, 2019. In the header section of this document, it reflects that Johnson must serve 2922 days of this sentence, which is listed as "days owed." (*Id*. at p. 1.) Under the header section of this document, each "credit" item applied to Johnson's sentence is reflected. Each entry is deducted from the total 2922 days owed toward this sentence – much like a check register. (*Id.*) The very first credit entry toward Johnson's minimum sentence reflects a 90-day credit for the completion of Johnson's high school diploma. (*Id.*) Thus, the total days "owed" for his sentence were reduced from 2922 days to only 2832 days. (*Id.*) Based on the deduction of these 90 days as well as all other credits earned by Johnson, his P.E.D. date was correctly calculated to be April 21, 2023. (*Id.*) As explained by Widmar, if the 90-credit was not applied, the P.E.D. would be 90 days after April 21, 2023, or sometime in July 2023. (*Id.*) Therefore, contrary to Johnson's

assertions, the 90 day good time credits were properly applied to his minimum sentence and in calculating his P.E.D. Thus, because the Court finds that good time credits were properly applied, Johnson cannot clearly show an adverse action.

### ii. Causation – Evidence of Retaliation

Regardless of whether Johnson's credits were properly calculated, the Court turns to Johnson's assertion that Defendants LaFleur and Ferro denied good time credits *because* Johnson filed grievances. During the hearing, Defendants LaFleur and Ferro testified as to the retaliation claim. (ECF No. 49.) According to their testimony, Defendants LaFleur and Ferro are both caseworkers employed with the NDOC. (*Id.*) First, Defendants each testified that they were neither responsible for, nor did they, calculate or input Johnson's good time credits related to his high school diploma. (*Id.*) Next, each Defendant testified that while they do respond to grievances as part of their job duties, they could not recall specific grievances from Johnson that they responded to. (*Id.*) Finally, each Defendant affirmatively testified that they did not cause Johnson's good time credits related to his high school diploma to be misapplied. (*Id.*)

Based on the above, there is no evidence in the record showing that Defendants LaFleur or Ferro were responsible for calculating or applying good time credits. Further, even if the Court were to assume that Johnson's credits for his high school diploma were misapplied, and that these Defendants personally misapplied these credits—there is no evidence that the misapplication was *because of* Johnson filing grievances or in retaliation for Johnson filing grievances. *See Rhodes*, 408 F.3d at 567–68. Because the facts here do not clearly show that Johnson was retaliated against, the Court cannot issue a mandatory preliminary injunction. *See Garcia*, 786 F.3d at 740 (citations omitted).

### B. Irreparable Harm

Finally, in the context of a mandatory preliminary injunction, Johnson must also show that extreme or very serious harm *will* occur if an injunction is not issued. *Anderson*, 612 F.2d at 1115 (citations omitted) (emphasis added). As such, "[t]here must be a 'sufficient causal connection' between the alleged irreparable harm and the activity to be

enjoined, and showing that 'the requested injunction would forestall' the irreparable harm qualifies as such a connection." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018) (citing *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981–82 (9th Cir. 2011)). Here, the potential irreparable harm is that Johnson would be incarcerated for longer than required. Remaining in prison longer than required to serve one's sentence is a deprivation of his liberty that cannot be remedied after the fact. Therefore, the question in this case is whether receiving the credits towards his P.E.D. would speed up his *actual release date* if the credits were misapplied. If so, then Johnson undoubtedly would suffer irreparable harm. However, if receiving the credits towards his P.E.D. only moves up the date of when he *may* be granted parole, the question becomes whether Johnson is entitled to an earlier parole hearing date and whether ultimate determination to grant Johnson parole on his P.E.D. is a discretionary decision by the Parole Board.

NRS 213.10705 states "[t]he legislature finds and declares that the release or continuation of a person on parole or probation is an act of grace of the State. *No person has a right to parole or probation*, or to be placed in residential confinement, and it is not intended that the establishment of standards relating thereto create any such right or interest in liberty or property or establish a basis for any cause of action against the State, its political subdivisions, agencies, boards, commissions, departments, officers or employees." (emphasis added). This establishes that regardless of when Johnson reaches his P.E.D., he is not automatically paroled. The Parole Board still must decide whether Johnson will actually be paroled.

At the evidentiary hearing on January 27, 2023, Defendants represented that parole is an act of grace by the Parole Board and having a parole hearing does not automatically mean an inmate will be paroled after the hearing. (ECF No. 49.) Additionally, Defendants represented that Johnson has already been scheduled for the earliest parole hearing possible. (*Id.*) Therefore, regardless of whether Johnson's credits were properly applied or whether he was retaliated against, Johnson cannot show that

extreme or very serious harm will occur if a preliminary injunction is not imposed. Accordingly, for all these reasons, the Court cannot issue a mandatory preliminary injunction in this case.

## V.   CONCLUSION

For good cause appearing and the reasons stated above, the Court recommends that Johnson's motion for preliminary injunction, (ECF No. 35), be denied.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Johnson's motion for preliminary injunction, (ECF No. 35), be **DENIED.**

DATED: __January 27, 2023__.

UNITED STATES MAGISTRATE JUDGE